IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAYNARD SNEAD,

    Plaintiff,

    v.

CASEY CAMPBELL,
OFFICER PENDERGAST,
CO II WEAVER,
CO II BIBLE,
CO II THOMAS,

    Defendants.

Civil Action No.: RDB-19-2610

## MEMORANDUM OPINION

Pursuant to this Court's Memorandum Opinion and Order of October 19, 2020 (ECF 15 and 16) dismissing the above-captioned civil rights complaint as to Warden Casey Campbell and dismissing the complaint without prejudice as to Officers Bible and Thomas for failure to exhaust administrative remedies, Defendants Officers Pendergast and Weaver have filed a Motion to Dismiss or for Summary Judgment as to the claims against them. ECF 22. The motion is opposed by Plaintiff Maynard Snead. ECF 24. No hearing is necessary for determination of the matters pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the remaining claims shall be dismissed.

### Background

Plaintiff Maynard Snead was at all times relevant to the amended complaint committed to the custody of the Maryland Division of Correction and confined to Roxbury Correctional Institution ("RCI").[1] This Court summarized his claims against Pendergast and Weaver as follows:

---

[1] In his Opposition Response, Snead indicates he was granted a delayed release on parole for December 31, 2020. According to the Department of Public Safety and Correctional Services (DPSCS) inmate locator website, Snead is no longer incarcerated. *See* https://dpscs.maryland.gov/services/inmate-locator.shtml

> According to Snead, Officers Pendergast and Weaver shackled him incorrectly on an unspecified date for an unspecified purpose. ECF 4 at 4. Snead states that the manner in which Pendergast and Weaver shackled him ran afoul of the rules governing how inmates who rely upon the use of a cane are to be handcuffed and shackled during transport. *Id.* Snead claims he filed an administrative remedy procedure complaint ("ARP") regarding the incident stating that Pendergast should have been trained before being put in charge of transporting an inmate with a cane. *Id.* In the ARP response, Lt. Newlin remarked that Pendergast and Weaver have "now been trained in how to transport inmates with canes," but only after Snead was improperly shackled. *Id.* Snead claims he fell and sustained an injury as a result of the improper use of restraints. *Id.*

ECF 15 at 2.

Defendants Bible and Thomas raised an affirmative defense that Snead had not exhausted administrative remedies in connection with his claims against them. ECF 12-2 at 3, ¶ 3; ECF 12-4 at 2-3. This Court found as follows:

> It is undisputed that Snead failed to comply with the procedural requirements for exhaustion of his administrative remedies both because he did not timely appeal the ARP and because he never raised the claims against Bible and Thomas in a separate ARP to the Warden. Snead maintains that his appeals were untimely through no fault of his own because he is blind and is unable to write an appeal without assistance, which he tried to obtain but could not. ECF 14 at 3. He adds that he was on bed rest until February of 2019, adding to the difficulty in complying with the filing deadlines. *Id.* He explains that he told Lt. Newlin that if he dismissed the ARP, he would need help filing an appeal. *Id.* at 2.
>
> This Court finds that Snead's disability coupled with the fact that he was recovering from surgery, operated to make the administrative remedy procedure unavailable to him for purposes of appealing his ARP and the claim shall be deemed exhausted. Further, Snead's ARP was found to be meritorious by Warden Campbell, making the purpose of an appeal unclear. Snead's failure to initiate an ARP regarding the conduct of Officers Bible and Thomas was, by his own admission, not due to his disability or his medical condition. Rather, he simply mistakenly thought it was not necessary. His claims against Officers Bible and Thomas shall be dismissed without prejudice.

ECF 15 at 12.

Defendants Dwayne B. Weaver, CO II and Sergeant Shawn Pendergast provided affidavits in support of their Motion to Dismiss or for Summary Judgment. ECF 22-6; ECF 22-7. Pendergast

2

states that on November 15, 2018 at approximately 10:00 a.m. he was working with Weaver and the two were in charge of escorting three inmates from RCI to Maryland Correctional Institution Hagerstown ("MCIH") for x-rays. ECF 22-6 at 2, ¶ 3. After placing restraints on Snead, Pendergast escorted him out of the door of "Receiving ID." *Id.* Because Snead is blind, Pendergast was guiding Snead with "a hands on escort." *Id.* As they approached a ramp to walk down to the van, Pendergast told Snead the ramp was coming up and that it was slippery because it was beginning to snow. *Id.* at 2, ¶3. When Snead stepped onto the ramp he slipped "onto his rear and elbow" while Pendergast was "holding him and tried to hold him up to keep him from falling." *Id.* Nurses were called to the area to examine Snead after his fall. *Id.* Weaver's affidavit confirms Pendergast's account and adds that Pendergast was giving Snead verbal commands on directions where to go during the hands-on escort, but he slipped and fell when he stepped onto the ramp. ECF 22-7 at 2, ¶3.

In Snead's Opposition Response, he states that he did not have a choice whether to go on the November 15, 2018 trip. ECF 24 at 3. He explains that the x-ray trip was required if he wanted the surgery that he needed. *Id.* He maintains that Pendergast and Weaver "chose to disregard the rules and regulations and [his] rights by shackling [him] incorrectly." *Id.* He states he declined a prior x-ray trip because these same officers were assigned to escort him, and he noted that at that time he had a 20-minute discussion with them about their attempt to shackle him incorrectly. *Id.* at 4. On the November 15, 2018 trip, Snead states that Pendergast and Weaver could have checked with a supervisor regarding the proper way to restrain him, but they did not do that and shackled him the wrong way which contributed to his fall. *Id.* Snead also claims that the manner in which Pendergast was guiding him was not supportive because he should have been holding his arm and giving him directions. *Id.* at 4-5.

3

## Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless Ait appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.@ *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm=rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,@ then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party.

*Tinsley v. First Union Nat=l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. A[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

## Analysis

Defendants Pendergast and Weaver again raise the affirmative defense that Snead failed to exhaust administrative remedies prior to filing the complaint against them. ECF 22-1 at 4-10. As stated, however, this Court found that the administrative remedy process was unavailable to Snead because he was denied the assistance he requires as a blind inmate to timely file an appeal to the Commissioner of Correction. ECF 15 at 12. Accordingly, the merits of his claim against Pendergast and Weaver are addressed below.

The Eighth Amendment prohibits cruel and unusual punishment. The "Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Those duties include maintaining "reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer*, 511 U.S. at 832). To demonstrate a violation of his Eighth Amendment rights, a plaintiff must satisfy a two-part inquiry that includes both objective and subjective components. *See Raynor*, 817 F.3d at 127. First, to satisfy the objective inquiry, the plaintiff "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or a substantial risk of such harm. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014); *see also Farmer*, 511 U.S. at 834. The objective inquiry requires the

Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To satisfy the subjective component of the test, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety, in that the prison officials both were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that they actually drew that inference. *Id.* at 837.

The record here supports, at most, that Pendergast and Weaver were negligent in performing their duties in connection with escorting Snead on the November 15, 2018 x-ray trip. Negligence does not constitute cruel and unusual punishment. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). The absence of any subjective animus toward Snead is evidenced by the officers' immediate calls to medical staff to have Snead examined following his fall. Snead does not dispute this allegation. To the extent that his claim could be construed as asserting a claim for cruel and unusual punishment under the Eighth Amendment to the Constitution, which would require a showing of deliberate indifference to inmate health and safety, the asserted facts viewed in the light most favorable to Snead, do not support such a claim.

By separate Order which follows, the complaint shall be dismissed as to Defendants Pendergast and Weaver.

JANUARY 28, 2021
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

6